The People of the State of New York, Respondent, *v.* Caroline Kraft, Appellant.

*Evidence — abortion — weight to be given to dying declarations.*

Dying declarations are not entitled to as much weight as should be given to the highest species of testimony, nor to as great weight as should be given to the same statements testified to by the declarant when in health, and subjected to a cross-examination before the trial court.

The person receiving the dying declaration seldom has sufficient knowledge of the circumstances of the alleged offense to conduct a proper cross-examination, and the situation of the dying person usually prevents a searching inquiry; nor is it the experience of mankind that the apprehension of immediate death, from which there is no hope of escape, is always sufficient to induce persons so situated to speak the truth.

APPEAL by the defendant, Caroline Kraft, from a judgment of conviction of the crime of manslaughter in the first degree, rendered by the Court of General Sessions of the Peace in and for the city and county of New York on the 30th day of April, 1895, upon the verdict of a jury.

*William F. Howe,* for the appellant.

*John D. Lindsay,* for the respondent.

FOLLETT, J.:

The indictment charges that the defendant, on January 14, 1893,. by the use of an instrument called a catheter, attempted to procure the miscarriage of Bertha Kern, who was then pregnant, and that by means thereof she died. The evidence upon which the defendant was convicted consisted of the dying declaration of Bertha Kern, which was made January 28, 1893, to Michael J. B. Messemer, a coroner, and was reduced to writing and signed by the decedent.

Hearsay evidence is evidence given as to a statement made by a person not called as a witness which is received in evidence on the trial, to which class dying declarations belong. Declarations made in apprehension of death by a sick or wounded person, in respect to the cause of his condition, are admissible in trials for murder or manslaughter when the cause of the declarant's death is a fact in issue..

It is unnecessary to state the reasons for this rule which has so long prevailed. Its history is given by Mr. Justice STEPHEN at page 446 in the first volume of his History of the Criminal Law of England.

Whether the declarations were made in apprehension of death and after the declarant had lost all hope of recovery is to be determined by the judge, and the learned recorder rightly determined this question and properly received the declaration in evidence. In instructing the jury as to the weight which should be given to it, he said : " So that I charge you, gentlemen, that this testimony which has been introduced relative to the dying declaration of this girl is competent testimony and proper for you to consider, and it is your duty to take it into consideration, because it is evidence for you, and it is given all the sanction of evidence which the law can give to evidence." To this instruction the defendant's counsel took an exception, and it is now urged that it was error for the court to instruct the jury that " it (the dying declaration) is given all the sanction of evidence which the law can give to evidence."

The highest species of testimony is that given by an intelligent and wholly disinterested witness who observed under favorable circumstances the facts testified to. The recorder by his instruction declared that a dying declaration is given all the sanction or weight which the law can give to evidence. This was more than saying to the jury that the declaration was entitled to the same weight as if the same facts had been testified to by the declarant under an examination and cross-examination before the jury. One of the principal means of testing the credibility of testimony is the right to cross-examine a witness and develop every fact legitimately bearing upon the statement. When a dying declaration is read in evidence there is no opportunity to cross-examine the declarant, and no opportunity for the jury to see the witness and determine in respect to his intelligence and fairness. So far as we know, the question as to the weight to be given to such evidence has been considered in but one reported case in this State. In *People* v. *Knapp* (1 Edm. S. C. 179) Mr. Justice EDMONDS instructed the jury as follows : " And though that statement (the dying declaration) had been made with all the solemnity of a consciousness of approaching death, and, therefore, entitled to the same weight as her testimony would have been if given personally before them, yet it was not entitled to any

more, and was to be weighed and tested as to its credibility by all the other circumstances of the case." In that case the defendant was acquitted and the instruction was not reviewed.

The question as to the weight of such declarations has been discussed by many text writers, and all agree that it is not entitled to the same weight as though the declarant had stated the same facts on the trial, and an opportunity had been given to cross-examine and observe the demeanor of the witness. (3 Russ. Cr. [5th ed.] 361, 362; 1 Taylor Ev. [6th ed.] 646, § 652; Rosc. Cr. Ev. [9th ed.] 37; Field's Law of Ev., British India [4th ed.], Calcutta, 157 *et seq.;* Best Ev. [5th ed.] 637; Whart. Hom. [2d ed.] § 742; Whart. Cr. Ev. [8th ed.] § 276; 1 Greenl. Ev. [13th ed.] § 162; 1 Phill. Ev. [Edwards' ed.] 298; 2 Poth. Ob. [3d Am. ed.] 250.)

The dangers of implicitly relying on dying declarations are clearly pointed out by Mr. Justice APPLETON in his learned work on Evidence, at page 202 *et seq.*

But we are not left wholly to the authority of text writers. The question has been considered in three of the States of this Union, where it was held that the same weight should not be given to a dying declaration as would be given to the same statements testified to in the presence of the jury. (*State* v. *Green,* 13 Mo. 382; *McCannon* v. *State,* 51 id. 160; *State* v. *Vansant,* 80 id. 67; *State* v. *Mathes,* 90 id. 571; *Lambeth* v. *State,* 23 Miss. 322; 358; *Walker* v. *State,* 37 Tex. 366.)

Upon principle such declarations are not entitled to as much weight as should be given to the highest species of testimony, nor to as great weight as should be given to the same statements testified to by the declarant when in health and subjected to a cross-examination before the trial court. The person receiving the declaration seldom has sufficient knowledge of the circumstances of the alleged offense to conduct a proper cross-examination, and the situation of the dying person usually prevents a searching inquiry. Again, it is not the experience of mankind that the apprehension of immediate death, from which there is no hope of escape, is always sufficient to induce persons so situated to speak the truth. Criminals convicted on the most convincing evidence often assert their innocence while standing face to face with their executioners, and those who have committed offenses frequently impute their downfall to

others, on the theory that their conduct will seem less culpable in the eyes of their friends and of the world, and in such cases the conduct of each wrongdoer is seldom as fully and accurately disclosed in the dying declaration as it would be by an examination in court.

Without further giving the reasons why such declarations are not entitled to the highest degree of credit, which are fully stated in the authorities cited, we are of the opinion that the court erred in instructing the jury in respect to the weight which should be given to the declaration, and, for this reason, that the judgment should be reversed and a new trial granted.

VAN BRUNT, P. J.; and PARKER, J. :

We concur in the opinion of Mr. Justice FOLLETT, except in so far as it holds that the dying declaration was admissible under the proofs in this case. We think it was not.

Judgment reversed and new trial granted.